**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Wayne H. Jenness

    v.                                Civil No. 15-cv-005-LM

                                         Opinion No. 2015 DNH 167

Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Wayne Jenness moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of

the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to

draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts, document no. 9.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Jenness has a history of complaints about pain and numbness in his left shoulder and arm as well as back pain.  Jenness has also been diagnosed with mental impairments including

3

depression,[1] generalized anxiety disorder, panic disorder without agoraphobia, and alcohol abuse in partial remission. The record includes several opinions on Jenness's mental residual functional capacity ("RFC").[2]

In early October of 2012, Jenness was seen by Dr. Cheryl Bildner, who gave him a mental status examination and reviewed various records including individual therapy notes. Dr. Bildner diagnosed Jenness with depressive disorder and generalized anxiety disorder, and gave a "rule out" diagnosis of alcohol abuse.[3] Based upon her examination, she offered the following opinions on Jenness's then current level of functioning:

> Claimant is able to complete activities of daily living.
>
> . . . .
>
> Claimant is unable to sustain appropriate social interaction with others. He reports becoming verbally aggressive towards others and further reports losing his temper several times a week. He has worked alone for the

---

[1] Jenness's diagnoses for depression include depressive disorder, major depression, recurrent major depression, and "major depressive disorder, recurrent, mild." Tr. 579.

[2] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

[3] "'Rule-out' in a medical record means that the disorder is suspected but not confirmed – i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed to rule it out." Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

4

past 20 years.  He described how he was his "own boss" and had limited social interactions with others.

. . . .

Claimant is able to understand and recall basic information.  No gross deficits were observed in cognitive functioning.

. . . .

Claimant is unable to sustain concentration and complete tasks in a timely manner.  He has been unable to sustain employment and exhibits as well as describes a lack of focus and motivation.

. . . .

Claimant is unable to manage stress common to a work place.  He is unable to maintain a schedule.  He is able to make basic decisions.  He is unable to sustain appropriate social interaction.

Tr. 328.  Dr. Bildner also offered this prognosis:

Claimant is currently engaged in treatment.  Continuity of care is important.  It is unclear if claimant is taking medications reliably and consistently.  Return to work in the near future, on a consistent basis, is unlikely at this time.

Id.

Shortly after Dr. Bildner provided her opinions, a nonexamining state-agency psychological consultant, Dr. Laura Landerman, provided a mental RFC assessment of Jenness. Generally speaking, Dr. Landerman gave weight to Dr. Bildner's opinion, with some exceptions.  Substantively, Dr. Landerman opined that Jenness had no limitations in either the realm of understanding and memory or the realm of adaptation.  She also

5

opined that Jenness had some limitations in the realm of sustained concentration and persistence and the realm of social interaction. With regard to sustained concentration and persistence, Dr. Landerman indicated that Jenness had no significant limitations in five areas and moderate limitations in three areas. She also provided the following narrative explanation:

> [Jenness] is able to maintain a schedule [and attendance] with[in] customary tolerances[.] Dr. [Bildner] opines otherwise but her opinion is not fully supported by available [medical evidence of record] nor self reported activities which includes caretaking of wife on a daily regular basis.
>
> [Jenness] is able to sustain concentration and [attention] for routine tasks for two [hour periods.] Dr. Bildner's opinion that he is unable to do so is not fully supported in [the medical evidence of record] available[.]
>
> [Jenness] is able to persist to routine tasks at an acceptable pace within the context of an 8 hour day and 40 hour week without excessive interruptions from psych symptoms[.] Dr. Bildner opines otherwise which is not fully supported in available [medical evidence of record.]

Tr. 72. While Dr. Landerman noted the lack of support for Dr. Bildner's opinion in the medical record, she did not identify any support for her own opinion in the medical evidence of record. Moreover, to discredit Dr. Bildner's opinion on Jenness's ability to maintain a schedule, Dr. Landerman relied upon Jenness's self-reported caretaking activities, which

6

consisted of one or two hours per day of caring for his wife in the home they shared.  See Tr. 201.  With regard to social interaction, Dr. Landerman indicated that Jenness had no significant limitations in three areas and moderate limitations in two areas.  She also provided the following narrative explanation: "needs a semi-or socially-isolated work station and a supervisor who [delivers] feedback in a manner which is not overly harsh or critical of his performance."  Tr. 73.

In May of 2013, Dr. Lester Nicholson, Jenness's treating psychiatrist, completed a "Mental Impairment Medical Source Statement" on Jenness.  In the form he filled out, Dr. Nicholson diagnosed Jenness with recurrent major depression, generalized anxiety disorder, panic disorder without agoraphobia, and alcohol abuse in partial remission.  He also identified 10 different signs and symptoms of the disorders he diagnosed.

With regard to the mental abilities and aptitudes necessary for unskilled work, Dr. Nicholson rated Jenness as "unlimited or very good" in five areas and "limited but satisfactory" in three other areas.  He also opined that Jenness was "seriously limited but not precluded" in the area of accepting instructions and responding appropriately to criticism from supervisors and the area of dealing with normal work stress.  Tr. 543.  Finally, Dr. Nicholson opined that Jenness was "unable to meet competitive

standards" in six different abilities and aptitudes needed to do unskilled work: maintaining attention for two hours at a time, maintaining regular attendance and customary punctuality, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. Tr. 542-43. When asked to explain those limitations and "the medical/clinical findings that support[ed] [his] assessment," Dr. Nicholson responded: "Patient report." Tr. 544.

Finally, Dr. Nicholson opined that Jenness's mental impairments or treatment for those impairments would cause him to be absent from work more than four days per month. Dr. Nicholson gave this prognosis: "Fair given lack of response to treatment thus far." Tr. 541. At the time he gave his opinion, Dr. Nicholson had been treating Jenness for approximately four months, seeing him once every four to six weeks.

In a letter dated September 16, 2013, Dr. Nicholson informed Jenness's counsel that it was his "medical opinion that [Jenness's] limitations as assessed in the questionnaire sent to [counsel] on 5/6/13 continue[d] to be appropriate and [were]

8

consistent with [his] observations of Mr. Jenness as an ongoing patient." Tr. 550. Between May 6 and September 16, Dr. Nicholson saw Jenness on no fewer than four occasions, and during three of those visits, Dr. Nicholson administered mental status examinations.

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following severe impairments: degenerative disc disease of the spine, depression, anxiety (panic disorder without agoraphobia) and alcohol abuse in early remission (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb, balance, stoop, kneel, crouch or crawl. He is limited to the performance of simple, unskilled-type work. He is able to maintain attention and concentration for 2-hour increments throughout an 8-hour workday and 40-hour workweek. The claimant should avoid social interaction with the general public but can sustain brief and superficial social interaction with co-workers and supervisors.

9

. . . .

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . . .

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 21, 22, 25, 31, 32.  Based upon his assessment of Jenness's residual functional capacity, and a hypothetical question posed to a vocational expert ("VE") that incorporated the RFC recited above, the ALJ determined that Jenness was able to perform the jobs of assembler of plastic hospital products, marker, and automatic car-wash attendant.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this

case is whether Jenness was under a disability from July 12, 2012, through the date of the ALJ's decision, November 22, 2013.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he [she] applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

11

The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). Finally,

[i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

12

B. Jenness's Claims

Jenness claims that this case must be remanded because the ALJ: (1) determined his physical RFC without the benefit of the opinion of a medical expert; and (2) failed to give controlling weight to the opinion of his treating psychiatrist, Dr. Nicholson. Jenness's second argument, while not entirely correct, is sufficient to warrant remand.

Under the applicable Social Security regulations, if an ALJ happens to

> find that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). Because Dr. Nicholson's opinion was not consistent with the opinion offered by Dr. Landerman, the ALJ did not err by declining to give Dr. Nicholson's opinion controlling weight. But that is not the end of the story.

When an ALJ declines to give controlling weight to the opinion of a treating source, he or she must still determine the amount of weight to give it. When doing so, an ALJ should consider the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature

13

and extent of the treatment relationship; (3) supportability; (4) consistency with the record as a whole; (5) the medical specialization of the person giving the opinion; and (6) other factors which tend to support or contradict the opinion. See 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6). Here, after weighing the medical opinions before him, the ALJ gave great weight to the opinions of Dr. Landerman, and little weight to the opinions of Drs. Nicholson and Bildner.

The Social Security regulations pertaining to the assessment of medical opinions provide that

> generally speaking, the greatest weight should be placed on opinions from treating sources, with less weight placed on opinions from medical sources who merely examine a claimant, and the least weight of all on opinions from medical sources who have neither treated nor examined a claimant.

McLaughlin v. Colvin, No. 14-cv-154-LM, 2015 WL 3549063, at *5 (D.N.H. June 8, 2015). However, "[w]hile generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources may override treating doctor opinions, provided there is support for the result in the record." Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037 (unreported table decision), 1994 WL 251000, at *4 (1st Cir. 1994) (citations omitted); see also Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir.

14

1991) (collecting cases in which opinions of treating physicians have been permissibly discounted).

While it is for the ALJ to determine how much weight to give the opinion of a treating source, the ALJ must "always give good reasons in [his] notice of . . . decision for the weight [he gives a claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). To meet the "good reasons" requirement, the ALJ's reasons must be both specific, see Kenerson v. Astrue, No. 10-CV-161-SM, 2011 WL 1981609, at *4 (D.N.H. May 20, 2011) (citation omitted), and supportable, see Soto-Cedeño v. Astrue, 380 F. App'x 1, 4 (1st Cir. 2010). In sum, the ALJ's reasons must "offer a rationale that could be accepted by a reasonable mind." Widlund v. Astrue, No. 11-cv-371-JL, 2012 WL 1676990, at *9 (D.N.H. Apr. 16, 2012) (citing Lema v. Astrue, C.A. No. 09-11858, 2011 WL 1155195, at *4 (D. Mass. Mar. 21, 2011), report and recommendation adopted by 2012 WL 1676984 (D.N.H. May 14, 2012). Accordingly, the court turns to the explanations the ALJ gave for according less weight to the opinions of Dr. Nicholson than he accorded to the opinions of Dr. Landerman.

In his decision, the ALJ explained that he gave little weight to Dr. Nicholson's opinions because they were: (1) based largely upon Jenness's subjective allegations; (2) substantially

15

different from Dr. Landerman's opinions; (3) "provided on a check-box-type form, which was offered merely for the purposes of establishing disability," Tr. 30; (4) inconsistent with Dr. Nicholson's treatment notes; and (5) inconsistent Jenness' activities of daily living. While it is a close call, the court concludes that the ALJ has not articulated an adequate rationale for discounting Dr. Nicholson's opinions.

The court begins with two overarching concerns. First, the ALJ did not consider three of the six factors mentioned in 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6), i.e., those pertaining to Dr. Nicholson's area of specialization and the length and nature of his treatment relationship with Jenness.

Second, the ALJ's decision suffers from a general lack of specificity. An AJL must provide specific reasons for assigning weight to a treating source's opinion because "'specific reasons' . . . allow 'subsequent reviewers [to know] . . . the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Kenerson, 2011 WL 1981609, at *4 (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)). "[W]here no such 'specific reasons' are given, remand is appropriate if the failure renders meaningful review impossible." Id. at *4 (citing Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H. 2000)). Here, Dr. Nicholson's Mental

16

Impairment Medical Source Statement included many different opinions, including his conclusion that Jenness could not meet competitive standards in six different abilities and aptitudes needed to perform unskilled work. However, no more than two of the ALJ's five explanations are tied to a specific opinion offered by Dr. Nicholson; the rest are generic criticisms seemingly directed to Dr. Nicholson's statement as a whole. Beyond that, there are significant problems with most of the ALJ's individual explanations.

The ALJ "gave Dr. Nicholson's opinions little weight because they also appeared to be based largely on the claimant's subjective allegations, which, as I indicated above, I did not find to be entirely credible." Tr. 30. On its face, that is an acceptable reason for discounting a treating source's opinion. See Haggblad v. Astrue, No. 11-cv-028-JL, 2011 WL 6056889, at *12 (D.N.H. Nov. 17, 2011) (citations omitted), report and recommendation adopted by 2011 WL 6057750 (D.N.H. Dec. 6, 2011). But here, the ALJ noted Dr. Nicholson's reliance upon Jenness's subjective reports without also noting that Dr. Nicholson reaffirmed his opinions in his letter of September 16, 2013, which he wrote after he had given Jenness several mental status examinations. Nowhere in his discussion of Dr. Nicholson's opinions did the ALJ mention either the September 16 letter or

17

the mental status examinations that proceeded it.  The Acting Commissioner attempts to fill that gap in her memorandum of law, arguing that the results of Jenness's September 9 mental status examination support the ALJ's decision to discount Dr. Nicholson's opinion.  However, the court cannot affirm the ALJ's decision based upon rationales left unarticulated by the ALJ. See High v. Astrue, No. 10-cv-69-JD, 2011 WL 941572, at *6 (D.N.H. Mar. 17, 2011).  And, in any event, the Acting Commissioner does not explain how, precisely, the findings from the mental status examination contradict Dr. Nicholson's opinions.

The ALJ "gave Dr. Nicholson's opinion that the claimant was suffering from moderate limitations in performing his activities of daily living, and marked limitations in social functioning, and with respect to maintaining concentration, persistence and pace, little weight because these conclusions were so drastically divergent from the opinion of Dr. Landerman as to render them somewhat less reliable."  Tr. 30.  That Dr. Nicholson's opinions differed from Dr. Landerman's opinions provides no logical basis for deeming Dr. Landerman's opinions more reliable than Dr. Nicholson's opinions, especially where Dr. Nicholson's opinions were largely consistent with Dr.

18

Bildner's opinions, making Dr. Landerman's opinions the outliers, not Dr. Nicholson's.

The ALJ next criticizes Dr. Nicholson's opinions for being presented on a check-box form. But that criticism applies with equal force to Dr. Landerman's opinions, which are presented in a similarly generic manner. The court also notes that the bulk of the narrative in Dr. Landerman's mental RFC assessment consists of her attempt to discredit Dr. Bildner's opinions. Whether Dr. Landerman's criticisms of Dr. Bildner's opinions constitute substantial evidence in support of Dr. Landerman's opinions is an interesting question the court need not address.

The ALJ also found Dr. Nicholson's "opinion to be inconsistent with treatment notes that reflected improved symptoms with the claimant having engaged [in] consistent mental health treatment, and the claimant abstaining from alcohol use." Tr. 30. There are two problems. First, Dr. Nicholson offered opinions on multiple aspects of Jenness's mental RFC, and the ALJ does not indicate which of Dr. Nicholson's opinions is inconsistent with his treatment notes. Second, the ALJ does not identify the treatment notes to which he is referring, which is obviously an impediment to meaningful review. The Acting Commissioner, however, suggests that the relevant treatment

19

notes are those generated by Jenness's visits to Dr. Nicholson on September 9 and October 7, 2013.

In his note on the September 9 visit, Dr. Nicholson recorded the following history: "Pt is still depressed with no improvement in motivation, concentration, or energy but anxiety and sleep are a little better." Tr. 577. That visit resulted in an increase in Jenness's dosage of nortriptyline.[4] See Tr. 579. After the October 7 visit, Dr. Nicholson recorded the following history: "Pt reports minimal improvement in depression and anxiety on Nortriptyline 100 mg." Tr. 581. However, neither the ALJ nor the Acting Commissioner: (1) identifies any specific opinion by Dr. Nicholson that is inconsistent with the minimal improvement that resulted from the change in Jenness's medication; or (2) explains how that minimal improvement contradicts Dr. Nicholson's opinions that Jenness could not meet competitive standards in six different abilities and aptitudes needed to perform unskilled work.

Finally, the ALJ "found Dr. Nicholson's opinion inconsistent with the claimant's somewhat robust activities, and his diminished credibility given his limited work history and the exaggerated nature of the subjective allegations contained

---

[4] Nortriptyline is an antidepressant that is "also used to treat panic disorder." Dorland's Illustrated Medical Encyclopedia 1291 (23rd ed. 2012).

20

in his function report." Tr. 30. But, as noted, that explanation does not indicate the specific opinion(s) to which the ALJ was referring. Moreover, it does not indicate what "robust activities," in particular, were inconsistent with Dr. Nicholson's opinion(s).

As the court has noted, the adequacy of the ALJ's explanation for giving little weight to Dr. Nicholson's opinions is a close question. But, given the logical problems with some of the ALJ's explanations, and their significant lack of specificity, the court concludes that the ALJ's decision to discount Dr. Nicholson's opinions in favor of Dr. Landerman's opinions is not supported by substantial evidence. Accordingly, this case must be remanded.

Because this case is being remanded because of the manner in which the ALJ handled Dr. Nicholson's opinions, the court need not address Jenness's first argument, concerning the ALJ's assessment of his physical RFC. However, given the lack of any expert opinion on Jenness's physical RFC in the record, and given Jenness's alleged difficulties in using his left arm, the Acting Commissioner may wish to consider purchasing a consultative examination, to ensure that the record contains adequate evidence to support a proper determination of Jenness's physical RFC.

21

## IV. Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 10, is denied, and Jenness's motion to reverse that decision, document no. 7, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 27, 2015

cc:   D. Lance Tillinghast, Esq.
      Terry L. Ollila, Esq.