UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Rosemarie Wall**

   v.

Case No. 18-cv-277-PB
Opinion No. 2019 DNH 103

**Nancy A. Berryhill,**
**Acting Commissioner**
**Social Security Administration**

MEMORANDUM AND ORDER

Rosemarie Wall challenges the denial of her application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). She contends that the Administrative Law Judge ("ALJ") improperly weighed medical opinions in the record and impermissibly interpreted raw medical data. The Acting Commissioner, in turn, moves for an order affirming the ALJ's decision. I deny Wall's motion and affirm the Commissioner's decision.

## I.   BACKGROUND

### A.   Procedural Facts

Wall is a 62-year-old woman with a college degree. She previously worked as a human resources assistant in the payroll department of the IRS for 23 years. She alleges disability as of January 31, 2014, due to back and hip pain, knee pain, diabetes, and glaucoma.

Wall's application was initially denied in November 2015. On March 28, 2017, she testified at a hearing before ALJ Lisa Groeneveld-Meijer, who ultimately denied Wall's claim. See Administrative Transcript ("Tr.") 11-20. The Appeals Council denied her request for review in February 2018, rendering the ALJ's decision the final decision of the Acting Commissioner. See Tr. 1-7. Wall now appeals.

B.    **Medical Evidence**

Wall is 5'6" tall and weighed 328 pounds at the time of the hearing. Tr. 47. When she applied for disability insurance benefits, she alleged that she was disabled based on scoliosis, back and hip pain, degeneration of her spine, spinal stenosis, diabetes, glaucoma, high blood pressure, a thyroid condition, and eczema. Tr. 149.

In November 2013, Wall complained to her primary care provider, Rebecca Krasnof, M.D., of lower-back pain radiating into her thighs and knees, and Dr. Krasnof noted that she could not use non-steroidal anti-inflammatory drugs due to kidney issues. Tr. 406. Dr. Krasnof reported in April 2014 that Wall suffered bilateral knee pain in particular and that she had been complaining of lower-leg pain in general "for many years." Tr. 384. In December 2015, Wall again complained of knee pain and told Dr. Krasnof that she left her job in 2012 due to back and knee pain, which caused her difficulty getting in and out of her

2

desk chair.  Tr. 311.  An X-ray from December 2015 showed osteoarthritic changes in Wall's knees that were similar to results seen in a March 2012 X-ray.  Tr. 313.

Throughout the pertinent period, Wall's providers reported that she felt well; was not in acute or apparent distress; denied muscle pain, fatigue, and weakness; had good energy; that her posture, gait, coordination, sensation, and physical examinations in general were all normal; and that her lower extremities had normal strength, tone, and range of motion, with no pain, tenderness, or instability.  See Tr. 271, 274-75, 279, 312, 322, 324-25, 360-61, 364-65, 368-69, 374, 379, 383, 385, 456, 466-67, 480.  Her providers recommended over-the-counter medication and physical therapy for her back and knee pain.  Tr. 465, 468, 480-81.

In November 2015, a state agency physician, Marie Turner, M.D., reviewed the evidence of record and provided an opinion about Wall's abilities.  See Tr. 68-74.  According to Dr. Turner, Wall could perform light work, lift 20 pounds occasionally and 10 pounds frequently, stand or walk five hours a day, sit for six hours a day, climb ramps and stairs frequently, and balance, stoop, kneel and crawl occasionally.  Tr. 73-74.  Dr. Turner cited Wall's treatment records dated September 2013, April 2014, and May 2015, as well as results from two MRIs done in 2011 and 2013, in support of her findings.

See Tr. 71, 74. Those treatment records showed that Wall felt well, had good energy, and had a normal gait. See Tr. 71, 74 (referring to Tr. 219, 360-61). The MRI results showed a mild spinal canal stenosis. See Tr. 71.

A month later, in December 2015, Wall's chiropractor, John Avard, D.C., completed a form about Wall's abilities. See Tr. 236-41. Dr. Avard opined that Wall could sit for 2 hours, stand for 5 minutes, stand or walk less than 2 hours a day, and could never lift any weight. Tr. 238-39. He also indicated that Wall would need to lie down at unpredictable intervals daily, and that she would need to be absent from work more than three times per month due to chronic pain. Tr. 239, 241.

In January 2016, Dr. Krasnof, Wall's primary care provider, also provided a statement concerning Wall's functionality. See Tr. 242-47. Dr. Krasnof's opinion mirrors Dr. Avard's, with the exception that Dr. Krasnof reported that Wall could occasionally lift less than 10 pounds and would need to lie down every 1-2 hours. See Tr. 244-47.

### C.    The ALJ's Decision

The ALJ assessed Wall's claim under the five-step, sequential analysis required by 20 C.F.R. § 404.1520. At step one, she found that Wall had not engaged in substantial gainful activity since January 31, 2014, her alleged disability onset date. Tr. 13. At step two, the ALJ found that Wall's morbid

4

obesity, lumbar spinal stenosis, diabetes mellitus, scoliosis, medial joint space narrowing of the bilateral knees, degenerative changes of the first metatarsophalangeal joint on the right, and pes planus bilaterally qualified as severe impairments. Tr. 13. The ALJ also found that her chronic kidney disease, open angle glaucoma, and hyperthyroidism were not severe impairments. Tr. 14. At step three, the ALJ determined that none of Wall's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14; see 20 C.F.R. § 404.1520(d).

The ALJ then found that Wall had the residual functional capacity ("RFC") to perform sedentary work, with the following exceptions:

> she could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs, and occasionally stoop and balance. She should never kneel or crawl. She may need to use a cane to ambulate. [She] requires the option to shift positions from sitting to standing every hour.

Tr. 15.

The ALJ found that the clinical findings and physical examinations showed that Wall was capable of the level of work activity described in the RFC finding. Tr. 16. For example, the ALJ noted that Wall's providers repeatedly documented normal physical examinations in general, normal gait, and normal

strength, tone, and range of motion in her lower extremities. See Tr. 17-19. The ALJ also pointed to Wall's daily activities, noting that she exercised three times per week, went out by herself to appointments, drove, shopped for groceries at the market (albeit with a scooter), and prepared meals while seated at the stove. Tr. 16. In rejecting Wall's subjective complaints of limitations beyond those described in the RFC finding, the ALJ stressed that Wall's providers had recommended conservative treatment of over-the-counter medication and physical therapy. Tr. 16, 18-19. In addition, the ALJ referenced Wall's admissions that taking two ibuprofen brought relief and Tylenol took "the edge off" to the point where she could "manage." Tr. 16, 19; see Tr. 44.

In evaluating the opinion evidence, the ALJ gave "great weight" to the opinion of state agency physician Dr. Turner, because she was a highly qualified expert whose opinion was supported by and generally consistent with the medical evidence. Tr. 19. The ALJ assigned "lesser weight" to Dr. Krasnof's opinion, because she was not a specialist in the area about which she opined; she saw Wall infrequently; her opinion was unsupported by and inconsistent with clinical examinations; and she expressed much of her opinion by checking off items on a pre-printed form. Tr. 16-17. Finally, the ALJ discounted Dr. Avard's opinion, giving it "little weight," on the grounds that

he was not an acceptable medical source, his statement was inconsistent with and unsupported by the record, and he expressed many of his views by checking off items on a pre-printed form. Tr. 16-17.

Relying on the testimony of a vocational expert, the ALJ then found at step four that Wall could performing her past relevant work as a human resources assistant. Tr. 20. Accordingly, the ALJ concluded that Wall had not been disabled from the alleged disability onset date through the date of her decision. Tr. 20.

## II.  STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765,

7

769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for her, not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

### III.  ANALYSIS

Wall alleges that two errors in the ALJ's decision warrant remand.  She first argues that the ALJ improperly evaluated the medical opinions of Drs. Turner, Krasnof, and Avard.  She then contends that the ALJ impermissibly interpreted raw medical data in crafting Wall's RFC.  I address each argument in turn and conclude that neither has merit.

## A. Medical Opinion Evidence

An ALJ must consider both "medical opinions," defined as opinions provided by "acceptable medical sources," and "[o]pinions from medical sources who are not acceptable medical sources," along with other relevant evidence. See 20 C.F.R. § 404.1527; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ is instructed to consider the same factors when evaluating opinions from both acceptable and non-acceptable medical sources. See 20 C.F.R. § 404.1527(c),(f). Those factors include the nature of the relationship between the medical source and the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the source of the opinion is a specialist. See id.

A medical opinion from a treating provider is entitled to "controlling weight" if that opinion is well-supported and consistent with substantial evidence. 20 C.F.R. § 404.1527(c)(2); see Nichols v. US Soc. Sec. Admin., Acting Comm'r, 2018 DNH 047, 2018 WL 1307645, at *9 (D.N.H. Mar. 13, 2018). Even if a treating provider's opinion is not entitled to controlling weight, "it may be entitled to deference, insofar as it is well-supported." Nichols, 2018 WL 1307645, at *9 (internal quotation marks and citations omitted). Otherwise, the ALJ may discount a treating source's opinion only if she

9

gives "good reasons" for doing so, which must be "both specific and supportable." Jenness v. Colvin, 2015 DNH 167, 2015 WL 9688392, at *6 (D.N.H. Aug. 27, 2015) (citations omitted); see 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5.

Although opinions from non-acceptable medical sources are not entitled to deference, the ALJ generally should explain the weight given to them or otherwise ensure that the discussion of evidence makes her reasoning apparent. Korfiatis v. Berryhill, 2019 DNH 040, 2019 WL 1110798, at *4 (D.N.H. Mar. 8, 2019); see 20 C.F.R. § 404.1527(f)(2). Further, the ALJ is generally required to "give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [her]." 20 C.F.R. § 404.1527(c)(1). "However, just as an ALJ may properly decline to give controlling weight to the opinion of a treating source, an ALJ may also discount the weight given to the opinion of an examining source in favor of the opinion of a nonexamining source." Freddette v. Berryhill, 2019 DNH 003, 2019 WL 121249, at *5 (D.N.H. Jan. 7, 2019) (quoting Downs v. Colvin, 2015 DNH 113, 2015 WL 3549322, at *8 (D.N.H. June 8, 2015)).

Here, the ALJ gave "great weight" to the medical opinion of Dr. Turner, a nonexamining state agency physician, "lesser weight" to the medical opinion of Dr. Krasnof, a treating provider, and "little weight" to the opinion of Dr. Avard, a

10

treating chiropractor who is not an acceptable medical source.
I address Wall's challenges with respect to each below.

### 1. Dr. Turner's Opinion

Dr. Turner reviewed the medical record at the Commissioner's request and opined that Wall could perform light work, with some restrictions.  See Tr. 71-74.  Wall contends that Dr. Turner's opinion was based on a significantly incomplete record and therefore cannot bear "great weight" that the ALJ attributed to it.  I disagree.

It can be reversible error for an ALJ to rely on an opinion of a non-examining consultant who has not reviewed the full medical record.  Brown v. Colvin, 2015 DNH 141, 2015 WL 4416971, at *3 (D.N.H. July 17, 2015); Ferland v. Astrue, 2011 DNH 169, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011).  But "the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion."  Meldrem v. Colvin, 2017 DNH 096, 2017 WL 2257337, at *2 (D.N.H. May 23, 2017) (quoting Coppola v. Colvin, 2014 DNH 033, 2014 WL 677138, *8 (D.N.H. Feb. 21, 2014)).  An ALJ may rely on such an opinion "where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the

11

reviewer's assessment." Id. (quoting Ferland, 2011 WL 5199989, at *4).

Dr. Turner provided her opinion in November 2015, based on a record that included extensive evidence from Wall's treating providers. Wall "has not shown what later medical evidence undermines" that opinion. See Robar v. Astrue, 2011 DNH 110, 2011 WL 2729197, at *8 (D.N.H. July 13, 2011). Although Wall maintains that she complained of knee pain after November 2015, the record before Dr. Turner showed a history of knee pain complaints. Specifically, Dr. Turner noted Wall's reported use of a cane and a scooter for longer walks, correctly cited treatment records showing normal reciprocating gait, and explicitly relied on records that reported Wall's longstanding complaints of knee pain. See Tr. 71, 73; see also Tr. 218-20 (September 2013 record reporting complaints of "knee pain" and "bilateral lower extremity pain since 2006"); Tr. 360-63 (May 2015 record reporting complaints of pain in both knees). Wall's argument that Dr. Turner did not consider her knee pain because the opinion did not explicitly address it fails to persuade. Given Dr. Turner's reliance on records that reported knee pain and her observation that Wall exhibited normal gait, it is reasonable to infer that Dr. Turner in fact considered and rejected Wall's complaints. Wall's subsequent reports of knee pain, which were likewise accompanied by normal examinations of

12

her lower extremities, are not inconsistent with Dr. Turner's assessment.  See Tr. 454-56, 465-67.

Nor does the fact that Dr. Turner lacked the benefit of knee X-rays from December 2015 show that her opinion was based on a substantially incomplete record.  As Wall admits, a comparison of those X-rays to prior imaging indicates that her knee impairment had not changed significantly since at least March 2012.  Moreover, no doctor has opined that the 2015 X-rays established any limitations beyond those set forth in the RFC finding.  Because the 2015 X-rays are not inconsistent with her opinion, it is immaterial that Dr. Turner did not consider them.

### 2.    Dr. Krasnof's Opinion

Dr. Krasnof, Wall's primary care provider, opined that Wall had various limitations beyond those set forth in the ALJ's RFC finding.  See Tr. 242-47.  Wall challenges the ALJ's decision to give her opinion "lesser weight," arguing that Dr. Krasnof's opinion is consistent with substantial evidence in the record. The ALJ, however, provided good reasons for discounting the opinion.

First, the ALJ properly discounted Dr. Krasnof's opinion on the ground that she was not a specialist in the orthopedic issues about which she opined.  Cf. 20 C.F.R. § 404.1527(c)(5). Second, the ALJ supportably found that Dr. Krasnof saw Wall only once or twice a year.  Cf. id. § 404.1527(c)(2)(i).  Third, the

13

ALJ correctly stated that Dr. Krasnof did not support her opinion by citing clinical examinations, specific deficits, or observations of Wall's functioning. Cf. id. § 404.1527(c)(3). When asked to identify clinical and medical findings that supported her opinion, Dr. Krasnof merely referred to "office notes," "consult notes," and "patient's report." Tr. 242, 245. As discussed below, the ALJ properly found that the office and consult notes supported the RFC finding, and supportably discounted Wall's subjective complaints about more stringent limitations. Finally, the ALJ correctly stated that Dr. Krasnof expressed much of her opinion by checking off items on a pre-printed form, which "goes a long way toward supporting the ALJ's determination to accord [the] opinion little weight." Purdy, 887 F.3d at 13. Accordingly, Wall's challenge to the ALJ's weighing of Dr. Krasnof's opinion fails.

### 3. Dr. Avard's Opinion

Like Dr. Krasnof, Dr. Avard, opined that Wall had numerous limitations beyond those set forth in the RFC finding. See Tr. 236-41. The ALJ sufficiently explained her reasons for giving "little weight" to his opinion.

First, the ALJ correctly stated that Dr. Avard is not an acceptable medical source because he is a chiropractor, not a physician. See 20 C.F.R. § 404.1502(a). "Whether a medical source is acceptable or not is a valid consideration when

14

weighing an opinion." Barup v. US Soc. Sec. Admin., 2017 DNH 063, 2017 WL 1194644, at *8 (D.N.H. Mar. 31, 2017); see SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006). Second, the ALJ supportably found that the record does not support Dr. Avard's opinion that Wall would need to lie down at unpredictable intervals during the day. As the ALJ correctly emphasized elsewhere in the decision, treatment records repeatedly note that Wall generally had "good energy" and denied fatigue. See Tr. 274, 322, 360, 383. Finally, the ALJ correctly stated that Dr. Avard expressed many of his views by checking off items on a pre-printed form, which again is a valid reason to discount the opinion. See Purdy, 887 F.3d at 13.

## B. RFC Assessment

A claimant's RFC is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). It must be crafted by an ALJ based on all relevant evidence in the record. Id. In so doing, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Stephenson v. Halter, 2001 DNH 154, 2001 WL 951580, at *2 (D.N.H. Aug. 20, 2001) (quoting SSR 96-8p, 1996 WL 374184, at *5). This is typically done by "piec[ing] together the relevant medical facts from the findings and opinions of multiple physicians," Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987), but

15

may sometimes incorporate "common-sense judgments about functional capacity" based upon those findings. Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990). The ALJ, however, may not "interpret raw medical data in functional terms" or substitute her own opinion on medical issues. Nguyen, 172 F.3d at 35.

Wall contends that remand is warranted because the ALJ impermissibly interpreted raw medical data when the ALJ imposed functional limitations that differ from the only medical opinion supporting the RFC finding. Wall is wrong.

The ALJ adopted the limitations identified by Dr. Turner and then set some additional restrictions: sedentary instead of light work; climbing ramps and stairs occasionally as opposed to frequently; no crawling and no kneeling instead of crawling and kneeling occasionally; needing to use a cane; and requiring the option to shift positions from sitting to standing every hour. Compare Tr. 15, with Tr. 73-74. The ALJ explained that the greater restrictions were due to Wall's "continued body habitus, her occasional use of a cane, and her allegations of difficulty standing." Tr. 19. Those are commonsense findings that are largely based on the ALJ's evaluation of Wall's testimony, not impermissible medical judgments. Cf. Guzman v. Colvin, 2016 DNH 075, 2016 WL 1275036, at *3 (D.N.H. Apr. 1, 2016) (prohibition

16

on interpreting raw medical data applies to "inscrutable medical terminology that require[s] an expert to interpret").[1]

To the extent Wall argues that the ALJ interpreted the results of her 2015 knee X-rays, I am satisfied that the ALJ "did not attempt to translate the results into functional terms." Martin v. Berryhill, 2018 DNH 028, 2018 WL 799159, at *6 (D.N.H. Feb. 9, 2018). Rather, the ALJ acknowledged that imaging studies confirmed abnormalities and stated in the same sentence that "clinical examinations do not document related deficits consistent with [Wall's] allegations." Tr. 17.

In any event, Wall does not explain how the restrictions that went beyond those identified by Dr. Turner prejudiced her. Given that the ALJ crafted a more restrictive RFC, any error on the part of the ALJ is harmless. Cf. Smith v. Berryhill, 370 F. Supp. 3d 282, 289 (D. Mass. 2019) (where ALJ imposed stricter RFC limitations than state agency physicians identified,

---

[1] In rejecting Wall's subjective complaints about additional limitations, the ALJ supportably cited Wall's treatment records reporting that she felt well, had good energy, was not in acute or apparent distress, and had only minor complaints. See Tr. 17-19. The ALJ also relied upon benign findings in clinical examinations, including normal gait and normal strength, tone, and range of motion in the lower extremities, with no pain, tenderness, or instability. See id. Those are not even medical terms, let alone "inscrutable" ones. They are "plain" and "simple" statements about Wall's condition that the ALJ was entitled to rely upon "to render a common-sense judgment" about Wall's RFC. See Guzman, 2016 WL 1275036, at *4 (internal quotation marks omitted).

including sedentary instead of light work, finding any error to be harmless); Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, 2017 DNH 237, 2017 WL 5484657, at *6 n.10 (D.N.H. Nov. 15, 2017) ("where an ALJ purportedly errs in finding a more restrictive RFC it will typically be considered harmless error, as it is generally favorable to the claimant").  As the outcome would remain the same, remand would "amount to no more than an empty exercise."  See Ward, 211 F.3d at 656.

## IV.   **CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), I grant the Acting Commissioner's motion to affirm (Doc. No. 13) and deny Wall's motion for an order reversing the Acting Commissioner's decision (Doc. No. 9).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

June 27, 2019

cc:  Daniel W. McKenna, Esq.
Hugh Dun Rappaport, Esq.

18