Gerald L. CURRIER, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,
Defendant, Appellee.

No. 79–1156.

United States Court of Appeals,
First Circuit.

Submitted Sept. 14, 1979.

Decided Jan. 4, 1980.

H. Neil Berkson and Bragdon, Berkson & Mangones, Keene, N. H., on brief, for plaintiff, appellant.

William H. Shaheen, U. S. Atty., and Robert T. Kennedy, Asst. U. S. Atty., Concord, N. H., on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Gerald Currier brought this action under 42 U.S.C. § 405(g) to review the decision of the administrative law judge, adopted as the final decision of the Secretary of Health, Education and Welfare, denying appellant's claim of entitlement to disability benefits. The district court affirmed the Secretary's decision. Appellant challenges the judgment of the Secretary on two grounds: first, that by finding him "physically unimpaired" the administrative law judge used the wrong legal standard in evaluating his claim of a disabling mental condition; and second, that the administrative law judge's decision that he retained the residual functional capacity to perform his former type of work, albeit not at his former job site, is unsupported by substantial evidence.

As to the first contention, we are satisfied for the reasons expressed by the district court that the word "physically" instead of "mentally" did not reflect any misunderstanding of the nature of the claim nor of the basic legal question to be resolved.

We sustain appellant's second contention that the administrative law judge's decision is, on the present record, unsupported by substantial evidence.

Appellant, who is thirty-two years old and has a high school education, worked for several years as a custodian in a hospital prior to joining the United States Air Force on October 2, 1970. During the thirteen months appellant was in the Air Force, he was twice hospitalized for a serious mental condition. He was discharged from active duty for medical reasons on November 20, 1971. He subsequently received a one hundred per cent disability rating from the Veterans Administration. For the next five years, until March 12, 1976, appellant worked as a washer in a woolen mill. Starting in at least 1974, he received regular psychiatric treatment, including medication. In the late winter of 1976 he simultaneously experienced added marital pressures at home and increased harassment from his co-workers and supervisors at work to which he responded in an "inappropriate" manner. Upon the recommendation of a staff psychiatrist at the counselling center he attended on a regular basis, he took a leave of absence from work. He did not return when his leave was over and, in any event, was advised by his boss that he would be fired if he did return. He has not sought other employment.

Appellant filed an application for disability benefits on November 11, 1976 asserting that he became unable to work on March 12, 1976 (the date he began his leave of absence) due to a nervous condition, which he testified at the administrative hearing causes him to "shake" and get "all up tight."

The medical evidence introduced at the administrative hearing when appellant was unrepresented by counsel consists of four items: (1) a narrative summary of appellant's hospitalization in July and August of 1971 for psychiatric treatment while in the Air Force; (2) the notes of a Veterans Administration psychiatrist, Dr. John MacAllister, who saw appellant at regular intervals from September 23, 1974 until a few months before the administrative hearing; (3) a letter dated December 28, 1976 from Thomas Maynard, a psychiatric social worker, who worked with appellant "around marital and work issues" for approximately 18 months. Mr. Maynard's letter reports a staff psychiatrist's conclusory diagnosis of appellant's mental condition as of March, 1976; and (4) a letter dated April 5, 1977

from appellant's family physician, Dr. Denis Maryn, who did not state the length of time he had observed and treated the appellant.

The narrative summary of his Air Force experience indicates that appellant was twice hospitalized for observation and treatment in July and August of 1971. Diagnosed as schizophrenic, he was returned to duty after the first episode because of, among other things, "his motivation to return to duty." He was soon re-hospitalized and then later discharged from the active service after his case was referred to a medical review board. The report of his condition at this time indicated functional inadequacy "even when performing very minor tasks," and concluded that while appellant would not require hospitalization at a Veterans' Administration facility "[h]is impairment for social and industrial adaption is considerable." Appellant was diagnosed as having "schizophrenic reaction undifferentiated type, moderate, in partial remission, as manifested by loosening of associations, inappropriate behavior, poor performance, emotional liability, and social withdrawal . . . Impairment: marked for further military duty, considerable for social and vocational rehabilitation."

There is no information about appellant's mental condition from September of 1971 until September 23, 1974,[1] when he was first seen by Dr. John MacAllister, a psychiatrist with the Veterans Administration, upon whose impressions of the appellant the administrative law judge principally relies. Dr. MacAllister's sole indicated diagnosis of appellant's mental condition was entered in his notes on October 30, 1974 and substantially comported with the Air Force's 1971 diagnosis.[2]

Dr. MacAllister's notes of appellant's progress entered on his visits spanning over three years show that appellant was continually on medication for his condition but that even on medication he had at times

severe difficulty handling the combined pressures of a rocky marital situation and harassment by his co-workers. Dr. MacAllister's notes for December 10, 1975 reflect that appellant reported a deteriorating work environment. Appellant advised Dr. MacAllister that he couldn't take people constantly hollering at him and blaming him for everything and that he "told [his] boss off." Both Dr. MacAllister's notes and the letter from appellant's psychiatric social worker, Thomas Maynard, show that appellant experienced a particularly stressful time at work in the late winter of 1976 and responded inappropriately. In his notes of appellant's February 6, 1976 visit, Dr. MacAllister reported that "things" had been going well but that when his marital situation deteriorated he got very upset, and threw things (chairs, etc.) around. Dr. MacAllister also reported appellant's comments: "I just can't help myself—it's the same thing at the shop—they pick on me—even the bosses make fun of me and the way I do things—they shouldn't do that. I holler at them and tell them to leave me alone."

Dr. MacAllister's entry for March 19, 1976 shows that he had received a call from Thomas Maynard, appellant's social worker, to report that appellant was in some trouble at work and that the staff psychiatrist at the counselling center had recommended a leave of absence. Mr. Maynard's letter of December 28, 1976 corroborates this:

"At work, according to Mr. Currier and his employer, he was a target for ridicule and responded inappropriately. He became nervous and inefficient at work and was about to be fired when our consulting psychiatrist, Dr. Mai-Lan Rogoff, recommended a leave of absence in March of 1976. Her diagnosis at the time was 'anxiety neurosis exacerbated by situational stress in a person with schizoid personality who has suffered a psychotic break in the past.'

"Deferred—but lies between neurosis—identity crisis—depression and anxiety. Personality disorder—lack of identity. Schizoid."

---

**1.** Dr. MacAllister's entry of November 29, 1974 reflects that appellant reported that he was "out of treatment" for a couple of years.

**2.** Dr. MacAllister's impression of appellant was stated in his notes as follows:

At the end of the agreed upon absence, Mr. Currier chose not to return to work, having been warned by his employer that he would be fired immediately anyway."

It was the opinion of Mr. Maynard, as of December 28, 1976, that appellant could not presently hold a job in a competitive work situation.

Dr. Denis Maryn, a general practitioner who failed to state in his April 5, 1977 letter when he had treated appellant (other than to note three dates in the spring of 1977 that he took appellant's blood pressure readings), characterized appellant as displaying "unusual nervousness, erratic behavior, hypertension with mental confusion and distress." He stated his opinion to be that appellant is "totally disabled because of his personality problem and his blood pressure which can not easily be controlled by medication."

In contrast Dr. MacAllister's notes reflect a different view as to appellant's employability. In his entry on April 7, 1976, Dr. MacAllister noted that he felt appellant should not be working at the woolen mill "unless the pressures can be kept off him" and that he should "perhaps give thought to changing jobs." Dr. MacAllister had in earlier notes stated that appellant had openly discussed his marital problems with his co-workers and that he was "very ill-equipped to handle" either "physically or emotionally" the resultant joshing he received. In his notes of June 29, 1976 Dr. MacAllister stated that "as far as I am concerned he is employable" and that "he should actively seek a job." His notes of September 29, 1976 again state that appellant should work.

Both Dr. MacAllister and Mr. Maynard report a lessening of appellant's anxiety after he received a one hundred per cent disability rating from the Veterans Administration in the summer of 1976.

At the hearing appellant testified that, although on medication, he can perform only non-stressful activities such as fishing twice a week and considers himself unable to hold a job for "very long" because of his nervous condition.

On the present state of the evidence, we find that the administrative law judge's finding that appellant retained the residual functional capacity to perform the same type of work at another establishment and therefore not entitled to disability benefits is not supported by substantial evidence. Substantial evidence is "more than mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting from Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Miranda v. Secretary of HEW*, 514 F.2d 996, 998 (1st Cir. 1975). Dr. MacAllister's opinion upon which the administrative law judge principally relies, that appellant can work but at another location, is devoid of any reasoned analysis of why this man, whom the Air Force found functionally inadequate and whom Dr. MacAllister himself indicated was not a malingerer, would be able to function any more successfully in the future than he did at his most recent job in the woolen mill. Moreover, the only evidence from Dr. MacAllister consisted of clinical notes. The notes are unaccompanied by any formal opinion and diagnosis explaining to what degree and in what respect appellant may be impaired by his mental illness and relating these deficiencies to the requirements of his former job and other available jobs. Given the absence of developed information of this type and given the otherwise pessimistic picture of appellant's potentialities presented by the remaining evidence including the report of the psychiatric social worker, we do not think that Dr. MacAllister's conclusory reflections as to appellant's employability, *see* 20 C.F.R. § 1524(c) (1979), gleaned by the administrative law judge from Dr. MacAllister's office notes, constitute by themselves evidence that a reasonable mind would find adequate to reach the result arrived at. For this reason we believe there is good cause, pursuant to 42 U.S.C. § 405(g), for a remand to the Secretary for the taking of additional evidence.

On remand, the Secretary may admit as much additional evidence as is necessary for her to make a fair determination as to whether appellant is disabled. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974). We think the record should indicate sufficient evidence of appellant's present mental condition and most recent job behavior to permit the administrative law judge to decide, with expert assistance, if appellant's failure at the woolen mill, including the harassment he suffered at the hands of his co-workers and supervisors alike, was due to conduct intrinsic to a disabling mental condition, *see* 20 C.F.R. Part 404, Subpart P, App. 12.01–12.04 (1979), or whether appellant had the capacity, despite his diagnosed condition, to function adequately performing the same type of work once removed from that particular environment.

■ Appellant, now represented by counsel is, of course, the one with the burden of proof on the issue of whether he has a medically determinable impairment which disables him from performing the jobs he has done in the past. *Small v. Califano*, 565 F.2d 797, 800 (1st Cir. 1977); 42 U.S.C. § 423(d)(5); *Ramirez v. Secretary of HEW*, 528 F.2d 902, 903 (1st Cir. 1976). In most instances, where appellant himself fails to establish a sufficient claim of disability, the Secretary need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the Secretary has recognized that she has certain responsibilities with regard to the development of the evidence, 20 C.F.R. § 404.927 (1979); *Miranda, supra*, 514 F.2d at 998, and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled—as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness. *See Landess, supra*, 490 F.2d at 1189. We emphasize that we do not see such responsibilities arising in run of the mill cases, but here appellant seems obviously mentally impaired to some degree, having been found unemployable by the Air Force and effectively so by his principal civilian employer and having been diagnosed as having a non-trivial psychiatric condition. We think the administrative law judge could not in these special circumstances simply rely, without some further development, on the skimpy evidence before him, including that presented by the uncounselled and mentally impaired appellant.

*The judgment of the district court is vacated and the case is remanded to the district court for entry of an order remanding to the Secretary for further proceedings in accordance with this opinion.*