923 F.2d 840
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Candido Farina RODRIGUEZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 90-1472.
 United States Court of Appeals, First Circuit.
 Nov. 19, 1990.
 
 Appeal from the United States District Court for the District of Puerto Rico; Raymond L. Acosta, District Judge.
 Rafael Carreras-Valle on brief, for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Thomas D. Ramsey, Assistant Regional Counsel, Department of Health & Human Services, on brief, for appellee.
 D.P.R.
 AFFIRMED.
 Before LEVIN H. CAMPBELL, TORRUELLA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant Candido Farina Rodriguez filed an application for Social Security disability benefits on May 4, 1987, alleging disability since July 15, 1981 due to arthritis, high blood pressure, a head ailment, and angina. The Administrative Law Judge (ALJ) determined that claimant's insured status expired on December 31, 1985. After a hearing, the ALJ found claimant not disabled at step 4 of the sequential evaluation process, 20 C.F.R. Sec. 404.1520(e), on the ground that claimant's impairments did not preclude his return to his former work as a supervisor in an electrical wiring factory. After the Appeals Council denied claimant's request for review of the ALJ's decision, claimant appealed to the district court, which affirmed the Secretary. Claimant appeals, contending that the Secretary's decision is not supported by substantial evidence. We affirm.
 
 
 2
 Dr. Puig, a vocational expert, testified at the hearing that claimant's former type of work as a line supervisor in an electrical wiring factory was low-skilled and involved light to medium work. The ALJ posed for the vocational expert the following hypothetical:
 
 
 3
 And considering that there was a physical condition, which was minimal cervical spondylosis, with the intervertebral spaces are in good shape; without evidence of acute bone lesions nor evidence of arthritic changes. The cardiovascular functional capacity is completely normal, and in addition he was well oriented, immediate memory was good, he wasn't crying, nor were there any suicidal ideas or deliriums or hallucinations.
 
 
 4
 The vocational expert responded that an individual with the described impairments could perform the line supervisor job. The ALJ then posed a further hypothetical directed to claimant's subjective complaints:
 
 
 5
 And if we consider the somatic complaints expressed by the claimant today, to the effects that he suffers from joint pains, produced by arthritis, and parting from the premise that this was present on or before December of '85, and considering that he suffered from occasional dizzy spells. That he suffered from pain of an angina type with a duration time of 10 minutes. That he would get better with medications, considering the problem he expressed to the effect that his knees get swollen, his ankles fail him.
 
 
 6
 The vocational expert responded that an individual with those impairments could not perform any type of work.
 
 
 7
 In denying benefits, the ALJ permissibly credited the vocational expert's vocational conclusions based on the hypotheticals posed to him. In judging the medical evidence, however, the ALJ found that that evidence supported the first hypothetical, to which the vocational expert responded that claimant could perform his past work, but did not support the degree of pain and non-exertional impairments alleged by claimant and expressed in the second hypothetical, which the vocational expert agreed would preclude substantial gainful activity. We conclude that these findings were supported by substantial evidence.
 
 
 8
 The ALJ's hypothetical that claimant suffered from "minimal cervical spondylosis, with the intervertebral spaces ... in good shape; without evidence of acute bone lesions nor evidence of arthritic changes" was supported by an x-ray report of October 6, 1985, which stated exactly that. In addition, an October 7, 1985 knee examination found "no evidence of bone lesions" and "minimal degenerative changes with minute osteophyte formation of the joint margins." The ALJ's hypothetical that "cardiovascular functional capacity is completely normal" was supported by an October 9, 1986 x-ray report which found claimant's heart normal, by a heart scan of the same date which found "no scintigraphic evidence of acute myocardial infarct," and by a February 13, 1987 exercise stress test which classified claimant as "normal," "negative for ischemic ... changes," and with "excellent functional capacity." Finally, the ALJ's hypothetical that claimant was "well oriented, immediate memory was good, he wasn't crying, nor were there any suicidal ideas or deliriums or hallucinations" was supported by an April 15, 1985 psychological evaluation which stated exactly that and concluded that there was "[n]o need for psychiatric treatment."
 
 
 9
 As for the ALJ's second hypothetical, there was substantial evidence in the record to permit the ALJ to conclude that claimant's allegations of head, joint, and angina pain, dizzy spells, and knee and ankle problems were exaggerated and that these ailments did not preclude performing his former work. As we have said, the ALJ permissibly credited medical evidence that claimant's heart was functionally normal and that his arthritis and knee and joint problems were minor. Claimant himself testified that he takes medication for dizzy spells, angina, and high blood pressure and that these medications "alleviate the pain, the arthritis." Claimant also acknowledged daily activities inconsistent with disabling pain and dizzy spells, stating that he walks "for a little bit" during the day, does yard work, cares for animals that he keeps, goes out socially occasionally, and drives as needed. The ALJ further relied on her observation of the claimant. We conclude that the record contains adequate evidence to justify the ALJ's decision to discount claimant's allegations of pain and dizzy spells.
 
 
 10
 We note that the record in this case contains no medical evaluation of claimant's residual functional capacity. Such an evaluation would have enriched the record. For the reasons we have stated, however, the record as it is is adequate to support the Secretary's determination. Moreover, at step 4 of the sequential evaluation process it is ordinarily claimant's burden, not the Secretary's, to present evidence, including evidence of residual functional capacity, to demonstrate that claimant cannot return to his former work. Gray v. Heckler, 760 F.2d 369, 375 (1st Cir.1985); Pelletier v. Secretary of Health, Education and Welfare, 525 F.2d 158, 160 (1st Cir.1975). The circumstances of this case, where claimant had counsel and had no credible claim of a severe mental disorder, present no justification for a departure from that rule. See Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 80-81 (1st Cir.1982); Currier v. Secretary of Health, Education and Welfare, 612 F.2d 594, 598 (1st Cir.1980).
 
 
 11
 The judgment of the district court is affirmed.