# United States Court of Appeals
## For the First Circuit

No. 17-2146

JAN C. TORRES-PAGÁN,

Plaintiff, Appellant,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security Administration,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Iván A. Ramos, with whom RamosLaw was on brief, for appellant.
Louis J. George, Special Assistant U.S. Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellee.

August 10, 2018

**THOMPSON**, **Circuit Judge**.  In this Social Security benefits opinion, Jan Torres-Pagán ("Torres-Pagán") appeals from the District Court's order upholding an administrative law judge's ("ALJ") conclusion that, although he had previously been eligible for Supplemental Security Income ("SSI") benefits as a child, he was ineligible for the same as an adult.  Because we believe the record before the ALJ was not adequately developed enough to make that call, we vacate and remand.

## A. Getting Our Factual Bearings

We write here for the benefit of the parties involved. And because they know the facts, our stage setting is more of a sketch than it is a Monet.[1]  As of June 1, 2006, the Commissioner determined that Torres-Pagán, then twelve years old, was entitled to SSI benefits because he was found to meet the Social Security Administration's ("SSA" or the "Agency") requirements for "Mental Retardation."[2]  Individuals eligible for SSI benefits as a child are required under 42 U.S.C. § 1382c(a)(3)(H)(iii) to have their disability re-determined after reaching the age of eighteen.  Under

---

[1] For anyone longing for a more thorough discussion of how things transpired before arriving at our doorstep, check out the district court's opinion below.  See Torres-Pagán v. Berryhill, No. CV 16-30060-MGM, 2017 WL 4400748, at *1-3 (D. Mass. Sept. 29, 2017).

[2] Listing 112.05 is no longer called the "Mental Retardation" Listing.  It has since been redefined as the "Intellectual Disorder" Listing.  See 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

the re-determination process, the claimant is subjected to the rules governing adults applying for SSI benefits. See 20 C.F.R. § 416.987. In 2013, soon after Torres-Pagán turned 18, the Commissioner began a re-determination process to evaluate whether his SSI benefits were still necessitated. Torres-Pagán alleged that he was entitled to continued SSI benefits due to a learning disorder, psychiatric issues, and hearing loss.

On May 14, 2013, Torres-Pagán underwent a consultative examination by Dr. Robert Osofsky, an Otolaryngologist. Torres-Pagán explained to the doctor that he had a ten-year history of hearing loss stemming from a bilateral ear surgery. Dr. Osofsky determined that Torres-Pagán's ears were normal, however, and that "no significant ear or hearing pathology" existed at the time of examination.

A month later, on June 26, 2013, Torres-Pagán had a consultative psychological evaluation with Dr. Rafael Mora de Jesús, Ph. D. At this examination, he reported the prior ear surgery he had undergone as a child and explained that he could not lift heavy objects due to pain in his head and jaw. He also told Dr. de Jesús that his ability to work was inhibited by constant nosebleeds and headaches that occurred whenever he was in the sun. As for psychiatric problems, Torres-Pagán disclosed to Dr. de Jesús that he had been treated at a mental health facility from the age of twelve until about "one to two years ago" and that

he had been prescribed medications to assist with attention and sleep.  At the time of the examination, however, Torres-Pagán reported taking no medications.  Dr. de Jesús also performed cognitive testing on Torres-Pagán and determined that he had a below-average IQ and that his reading skills were "average" and math skills were in the "borderline range."[3]

And on July 2, 2013, Jon Perlman, Ed.D., a state agency psychological consultant, determined that while Torres-Pagán was moderately limited in his ability to understand, remember, and carry out detailed instructions and also had mild issues in his ability to maintain and concentrate for extended periods, he was otherwise not significantly limited in his mental residual functional capacity.  Dr. Perlman concluded that Torres-Pagán could remember simple instructions, complete routine tasks, make simple work-related decisions, work in proximity with others without being distracted by them, and interact appropriately with the general public.

Equipped with these reports, the Commissioner found that Torres-Pagán was no longer disabled and that his benefits should stop.  Torres-Pagán appealed by requesting reconsideration, but

---

[3] Though neither party defines the term "borderline range" we presume it refers to a below average cognitive ability.  See T.P. Alloway, Working Memory and Executive Function Profiles of Individuals with Borderline Intellectual Functioning, 54 J. of Intell. Disability Res. 448 (2010).

the decision was upheld by a disability hearing officer after she reviewed the records.

Torres-Pagán thereafter requested a hearing with an ALJ. At some point prior to the ALJ hearing, however, Torres-Pagán began psychiatric treatment at Valley Psychiatric Services ("Valley Psychiatric" or "Valley") in Springfield, Massachusetts. He submitted at least four separate forms to the SSA informing it that he was receiving such services. Indeed, on two different "Disability Report - Appeal" forms[4], Torres-Pagán was asked by the Agency to "tell [the SSA] who may have medical records or other information about your illnesses, injuries, or conditions" and each time Torres-Pagán provided the name, address, and phone number of Valley Psychiatric. As for why he was visiting Valley, Torres-Pagán wrote down "suicidal" on one form and "psychiatric iccues [sic]" on the other. He also filled out a form entitled "Claimant's Recent Medical Treatment" where he listed Candace O'Brien, CNS, an employee of Valley Psychiatric, as his treating physician. He again listed Valley Psychiatric's address and phone number on the form. Finally, Torres-Pagán submitted a form entitled "Claimant's Medications" where he listed that as of June 19, 2014, he was taking several prescription psychiatric medications including Latuda (40mg), Mirtazapine (30mg),

---

[4] Within the Agency these are formally known as SSA-3441 Forms.

Hydroxyzine (25mg), and Divalproex (500mg). Each of these prescriptions was noted as being prescribed by Ms. O'Brien.

At the hearing, Torres-Pagán, his mother (Liliam Pagán), and a vocational expert were present. Torres-Pagán was not represented by counsel, however. Though the ALJ told Torres-Pagán that proceeding without an attorney could be detrimental to his benefits claim, Torres-Pagán nevertheless elected to proceed pro se.

The ALJ explained to Torres-Pagán and Lilliam that he planned to rely in some part upon Dr. de Jesús's consultative psychiatric examination in reaching his ultimate decision of whether continued SSI benefits were needed. It became clear, however, that Lilliam had never seen the report. To ensure everyone was on the same page, the ALJ took a recess to provide Torres-Pagán and his mother extra time to review Dr. de Jesús's conclusions before proceeding further with the hearing.

Once Torres-Pagán and Lilliam had gone over the report, the hearing reconvened. The ALJ asked Torres-Pagán whether the report was accurate and he confirmed it was. The ALJ then asked why Torres-Pagán believed SSI benefits were needed. Torres-Pagán replied that he was prone to headaches and migraines when working in the sun and that he experienced pain when lifting heavy objects. In light of Torres-Pagán's stated limitations, the ALJ asked the vocational expert whether there existed jobs that would (1) require

Torres-Pagán to lift no more than twenty pounds, (2) not expose him to the sun, and (3) would not require him to remember detailed or complex instructions. The vocational expert answered that there was, noting that employment as a janitor, laundry sorter, or cashier would all meet those requirements and that at least one hundred such jobs existed in Massachusetts and at least one thousand existed nationally.

Torres-Pagán was asked whether there was any reason he could not perform those types of jobs and he responded in the negative. The ALJ also followed up with Lilliam, asking whether in light of her son's testimony, she believed he could perform the sorts of jobs identified by the vocational expert. She responded, "[i]f he says that he's able to do that, I will not say against -- I could not go against his words."

Before the hearing ended the ALJ made one last inquiry, asking whether there was anything else Torres-Pagán wanted to let him know before he left to make his decision about the benefits at issue. The following exchange then took place:

> Torres-Pagán: Well, because my, like, lexis [phonetic] [sic], I was not even on pills. I was not drinking pills, because I got -- [INAUDIBLE], a lot of anxiety.
>
> ALJ: Mm-hmm, you have a kid too, don't you?
>
> Torres-Pagán: I have a kid though, too. I cannot sleep at night; I be staying up, like, to 2:00, 3:00 in the morning, 4:00 in the morning without no sleep, then in -- I can't still sleep, then I can sleep a little bit,

then I wake up, like, one hour or two hours then; they give me pills for that.

ALJ: Mm-hmm

Torres-Pagán: They giving me pills for anxiety, they give me a pill for bipolarity.

ALJ: Mm-hmm

Torres-Pagán: And all that is helping me now because --

ALJ: Good.

Torres-Pagán: Back then I didn't used to it.[5]

The ALJ acknowledged Torres-Pagán's statement, stating: "Well, I'm glad that you find relief from the medicines you're taking." Torres-Pagán said nothing more on the topic. A little under two weeks later, the ALJ released its decision, finding that Torres-Pagán was not disabled under the Social Security Act.[6]

---

[5] We know that this back-and-forth is a bit confusing, but it is relevant to our upcoming analysis, so bear with us.

[6] In arriving at this conclusion, the ALJ should have used a five-step sequential process to evaluate Torres-Pagán's disability claim. See 20 C.F.R. § 416.987(b). This sequence--which is the same one used for adult claimants who file new applications-- proceeds as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual

## B. The District Court's Decision

At the District Court, Torres-Pagán provided numerous reasons for reversing the decision of the ALJ. As relevant to us (and citing our precedent in Heggarty v. Sullivan, 947 F.2d 990 (1st Cir. 1991)), Torres-Pagán argued that because Social Security proceedings are not adversarial in nature, the ALJ "had a duty to develop an adequate record from which a reasonable conclusion [could] be drawn." Heggarty, 947 F.2d at 997 (citing Carrillo Marin v. Sec'y of Health & Human Servs., 758 F.2d 14, 17 (1st Cir. 1985)). By failing to obtain the psychiatric medical records from Valley, Torres-Pagán maintained that the ALJ had failed to fulfill this basic requirement. The lower court, however, disagreed. It explained that the record was adequately developed

---

> functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Here, however, the ALJ incorrectly utilized a different, seven-step evaluation process that is used to determine whether there has been an improvement in an individual's impairment(s) related to the ability to do work. The Commissioner concedes the ALJ was wrong to implement this "medical improvement" standard, but maintains that the seven-step process is actually more lenient than the five-step evaluation that should have been used. We need not address whether one standard is more lenient than the other, however. For one thing, Torres-Pagán has not made any challenge to the ALJ's inadvertent mix-up, so any such argument is not currently before us. Moreover, the ALJ's analysis (for all intents and purposes) applied the substance of the five-step analysis such that any error was necessarily harmless. We do expect, however, that on remand the ALJ will utilize the correct five-step standard.

despite Plaintiff's pro se status and despite evidence of some mental impairment. The ALJ fairly relied on Plaintiff's testimony that he could perform work within certain limitations, testimony corroborated by Dr. Mora de Jesús's consultative report, Plaintiff's acknowledgment that report was accurate and, to some extent, [Lilliam] Pagán's testimony. In short, Plaintiff's contention that consideration of his psychiatric records would have strongly supported a finding of disability remains speculative and overlooks all contradictory evidence from which the ALJ inferred that Plaintiff was able to perform limited work.

Torres-Pagán v. Berryhill, No. CV 16-30060-MGM, 2017 WL 4400748, at *5 (D. Mass. Sept. 29, 2017) (internal quotations omitted). For this reason (along with a few others we need not address), it affirmed the ALJ's decision.

### C. Our Take

On appeal, Torres-Pagán continues to argue that the record before the ALJ was simply insufficient to conclude he was no longer disabled, particularly in light of the fact that the ALJ was on notice through both SSA filings and hearing testimony that Torres-Pagán was being treated for psychiatric issues. Unlike our colleague at the District Court, however, our de novo review leads us to believe this argument has some wind in its sails.

More than three decades ago we explained,

In most instances, where appellant himself fails to establish a sufficient claim of disability, the [Commissioner] need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the [Commissioner] has recognized that she has certain responsibilities with regard to the development of the evidence and we believe this responsibility increases in cases where the appellant is

- 10 -

unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

Currier v. Sec'y of Health, Ed. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980). And the case of Torres-Pagán, we think, is one that falls squarely within the framework outlined in Currier.

First, we note that Torres-Pagán was unrepresented by counsel. While it is true that "the absence of counsel, without more, creates no basis for remand," Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 142 (1st Cir. 1987), Torres-Pagán was not merely a pro se claimant. Rather, Torres-Pagán was a claimant with arguably severe special needs. Indeed, Torres-Pagán's original grant of SSI benefits was premised on his meeting the requirements of SSA's Listing for Mental Retardation. Moreover, Torres-Pagán was identified by Dr. de Jesús as having an IQ of only 84, one designated as a "Below-Average" classification of non-verbal cognitive functioning. This IQ, Dr. de Jesús's report explained, put Torres-Pagán in only the 14th percentile nationwide. Pro se status, coupled with diagnosed mental deficiencies, is without question the type of situation where we believe an ALJ has a heightened responsibility to develop the record.

- 11 -

Not only that, but the ALJ here was more than aware that Torres-Pagán was undergoing psychiatric treatment at Valley, and yet he hardly inquired about the treatment. Torres-Pagán had provided the Agency with his doctor's name, the medical facility (Valley), his prescribed medications (with dosages), Valley's address, Valley's phone number, and reasons for visiting Valley (including supposed suicidal tendencies). He also attempted to inform the ALJ of his psychiatric treatment at the end of the hearing, but the ALJ seemed disinterested, answering "Mm-hmm" and responding with no follow-up questions about Torres-Pagán's claims of sleep disorder, anxiety, and bipolarity. This is especially egregious given that the hearing transcript reveals Torres-Pagán struggled to fully explain his alleged ailments and, despite this, the ALJ in no way sought to ask anything that would clarify Torres-Pagán's remarks. To us, the claim of psychiatric disability seemed substantial on its face with gaps that should have been filled. For reasons that are unclear, however, the claim appears to have been more or less ignored.[7]

We have stated that "[u]nder 42 U.S.C. § 405(g), a remand to the [Commissioner] is appropriate where 'the court determines

---

[7] We recognize that Torres-Pagán did not deny that he could do the jobs of cashier, cleaner, or laundry sorter when asked about that work by the ALJ. But we hardly find that single statement by Torres-Pagán to be sufficient to excuse the ALJ's failure to adequately develop (or attempt to develop) the record.

that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing.'" Heggarty, 947 F.2d 990, 997 (1st Cir. 1991) (citing Evangelista, 826 F.2d at 139). And here, we believe those requirements have been met. While the Commissioner argues that Torres-Pagán has failed to demonstrate how he was prejudiced by Valley's records being left out of the record (by, for example, providing a proffer of what the Valley records would show), we conclude such an argument is a failure.[8] For one thing, the relevance of Torres-Pagán's mental health treatment records to the ALJ's determination of whether Torres-Pagán suffered from mental health impairments is plainly evident. Moreover, individuals with psychiatric disorders are often some of the most vulnerable in society and unlike the standard pro se claimant at an SSA hearing, those with alleged disabilities sounding in mental health may be particularly vulnerable when unrepresented by counsel. We are thus satisfied

---

[8] As a side note, at oral argument we specifically requested the Commissioner file a 28(j) letter pointing us to any case law supporting her position that a proffer is necessary to show prejudice. She conceded in that letter that she could "identif[y] no authority requiring proffer." (emphasis the Commissioner's). We, too, have found nothing from any federal Circuit court in the country imposing such a mandate. While there is certainly no harm in providing a proffer, we decline to make it an explicit requirement of showing prejudice in cases like these.

- 13 -

that Torres-Pagán was prejudiced by having his psychiatric treatment ignored by the ALJ.[9]

### D. The End

While claimants for Social Security benefits should have their cases thoroughly investigated by the SSA, it should surprise no one that additional diligence is often warranted when the claimant suffers from alleged mental disability. It is incumbent upon the Commissioner to ensure that the records upon which benefits decisions are made are fully developed and that individuals with psychological problems are not given short shrift. The judgment of the District Court is vacated and the case is remanded with instructions to enter an order remanding to the Commissioner for further proceedings not inconsistent with this opinion. Costs are taxed in favor of Jan C. Torres-Págan.

---

[9] Torres-Pagán also argues that the ALJ erred by failing to state which impairments he found severe at "Step 2" of the sequential process to evaluate Torres-Pagán's disability claim. In light of our remand due to the lack of a developed record, we need not address this concern.