# United States Court of Appeals
## For the First Circuit

No. 22-1169

STEPHEN R. CROCKETT,

Petitioner,

v.

UNITED STATES RAILROAD RETIREMENT BOARD,

Respondent.

PETITION FOR REVIEW OF A DECISION OF
THE UNITED STATES RAILROAD RETIREMENT BOARD

Before

Barron, <u>Chief Judge</u>,
Howard and Kayatta, <u>Circuit Judges</u>.

<u>Riley L. Fenner</u> for petitioner.
<u>Eunice Kirk</u>, Office of General Counsel, United States
Railroad Retirement Board, with whom <u>Ana M. Kocur</u>, General Counsel,
<u>Marguerite P. Dadabo</u>, Assistant General Counsel, and <u>Tamra J.
Smith</u>, General Attorney, were on brief, for respondent.

February 28, 2023

**HOWARD**, **Circuit Judge**.  This petition for review requires us to determine whether substantial evidence supported the findings that underpinned the U.S. Railroad Retirement Board's ("Board" or "RRB") decision to deny petitioner Stephen R. Crockett a disabled child's annuity under the Railroad Retirement Act ("RRA"), 45 U.S.C. § 231a(d)(1)(iii).  While we may have weighed the evidence before the agency differently had we been in a position to do so, we nevertheless recognize that the substantial evidence standard under which we review the agency's findings is "highly deferential."  Loja-Tene v. Barr, 975 F.3d 58, 62 (1st Cir. 2020) (quoting Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007)).  Mindful of that maxim, we deny Crockett's petition.

## I.

We briefly review the procedural history and factual background of this appeal.  Crockett, the son of a railroad worker, applied in July 2015 for a disabled child's annuity under 45 U.S.C. § 231a(d)(1)(iii).  As relevant here, that provision of the RRA entitles unmarried children of certain deceased railroad employees to an annuity if they (among other requirements) have developed a disability before the age of 22.  The petition for review implicates two of the Board's findings concerning Crockett's application: (1) that there was inadequate evidence under the agency's regulations to support a finding that Crockett had a

- 2 -

physical or mental impairment prior to age 22; and (2) that Crockett's provision of in-home care services for his mother from January 2001 to March 2006 constituted substantial gainful activity and undercut his disability claim. As further discussed below, we ultimately conclude that the first finding was supported by substantial evidence, and tailor our discussion accordingly.[1]

**A.**

Crockett was born in 1954 and turned 22 in 1976. Crockett stated in his annuity application that his activities have been severely affected by an "emotional [and] psychological disorder" beginning in March 1964, at the age of 10, and continuing since then. He indicated that he had undergone psychiatric treatment in March 1967 and again from 2011 through the date of his application. Crockett also later stated before a Board hearings officer that he underwent treatment from 1967 through 1971 and then again during the 1980s. He recalled Dr. Carlyle Voss, the psychiatrist who treated him in the late 1960s and early 1970s, diagnosing him with schizophrenia.

When Crockett asked Voss to confirm this treatment in 2015, Voss initially did not recall having him as a patient. He noted that any relevant treatment records had been destroyed in

---

[1] As alluded to at oral argument, since our conclusion that the Board's first finding was supported by substantial evidence suffices to uphold its decision, and we find no error of law, we decline to address the substantial gainful activity finding.

the decades since and that he "treated hundreds of patients . . . over a span of 17 years."  However, Voss noted that "[i]t is probable that [he] did treat Mr. Crockett for mental health issues in the early/mid [1970s]."  Two years after this initial letter, Voss wrote to the Board in a second letter that he did, in fact, remember both treating Crockett "primarily to manage Thorazine, [Crockett's] medication for a severe psychotic disorder," and diagnosing him with schizophrenia.  The letter also indicated that Voss spoke with Crockett's "current provider" about Crockett's condition prior to writing this second letter.  In any case, the diagnosis that Voss recalled would be consistent with that of his current treating psychiatrist, Dr. Leora Rabin, who also concluded over the course of her treatment of Crockett that he suffers from schizophrenia.

Also relevant to this appeal is Crockett's application to the Social Security Administration ("SSA") for disability benefits in September 2010.  Crockett amended his disability onset date before the SSA, but at no point did he argue that he was disabled before the age of 22.  An Administrative Law Judge ("ALJ") ultimately granted Crockett's Social Security disability application, finding him "disabled as of July 14, 2010 because of schizotypal personality disorder so severe that it meets the requirements of one of the impairments listed in [SSA guidance]."

**B.**

Crockett has had his claims reviewed four times by the agency since he submitted his annuity application in 2015, as he is entitled to under the Board's regulations. See 20 C.F.R. § 260.1 (initial decisions); § 260.3 (requests for reconsideration); § 260.5 (appeal from a reconsideration decision); § 260.9 (appeal from a decision of a hearings officer to the Board). Board staff initially denied his application on the basis that "there [was] insufficient medical evidence" establishing that he was disabled prior to age 22, and staff reaffirmed this denial on the same basis several months later on reconsideration. Crockett then appealed the reconsideration decision to the Board's Bureau of Hearings and Appeals. A hearings officer took Crockett's testimony by videoconference in November 2018; Crockett was represented at this hearing by his social worker. The hearings officer found that Crockett was not disabled for purposes of the disabled child's annuity both because there was no medical evidence supporting a physical or mental impairment prior to age 22, and because his home care work constituted substantial gainful activity under Board regulations. The officer concluded so on the basis of Crockett's testimony and several other forms of evidence, ranging from Crockett's high school transcript to SSA wage data. The three governing members of the Board then

affirmed the hearings officer's decision on largely the same grounds. This appeal followed.

## II.

Section 8 of the RRA vests us with jurisdiction to review the Board's eligibility determinations for statutorily derived benefits. See 45 U.S.C. § 231g.[2] We will affirm the Board's determination as long as "substantial evidence exists to support [its] findings[] and . . . there is no error of law." Sansone v. U.S. R.R. Ret. Bd., 159 F. App'x 210, 211 (1st Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 399 (1971)). To that end, "[w]e may not weigh the evidence [anew] and decide the ultimate question [of] whether a claimant is disabled." Dray v. U.S. R.R. Ret. Bd., 10 F.3d 1306, 1310 (7th Cir. 1993).

---

[2] Because the Board issued its own decision on Crockett's claims, we review that decision pursuant to the judicial-review provisions of the RRA. See 45 U.S.C. § 355(f) (incorporated by reference in 45 U.S.C. § 231g). Nevertheless, because the Board relied on the hearings officer's determinations in making its decision, we will also subject the sections of the hearings officer's decision on which the Board relied to our review. See Duncan v. U.S. R.R. Ret. Bd., 787 F.3d 400, 406-08 (7th Cir. 2015) (adopting a similar approach when the Board affirmed and adopted a hearings officer's decision but also "added its own comments"); cf. Sansone v. U.S. R.R. Ret. Bd., 159 F. App'x 210, 211 n.1 (1st Cir. 2005) ("Because the Board affirmed and adopted the hearings officer's decision, on appeal we evaluate the judgment of the hearings officer." (citing Dray v. U.S. R.R. Ret. Bd., 10 F.3d 1306, 1310 (7th Cir. 1993))).

As previewed above, Crockett argues that the Board's conclusion that -- as he characterized it -- "the record established conclusively that [he] did not have any physical or mental impairment prior to age 22 [is] not supported by substantial evidence." In doing so, he appears to aim at the Board's statements that "there was no medical evidence to support that Mr. Crockett had a physical or mental impairment prior to age 22," and more generally that the conclusion that "Crockett was not disabled prior to age 22 . . . was reasonable and consistent with the evidence of record."[3]

The Board's regulations mandate that "[a] physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 220.27. These impairments "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms." Id. Relevantly to Crockett's petition, "[p]sychiatric signs are medically demonstrable phenomena which indicate specific abnormalities of

---

[3] Crockett also more specifically disputed the Board's "no medical evidence" finding in his reply brief. We address both of his contentions.

behavior, affect, thought, memory, orientation[,] and contact with reality. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 220.113(b).

The Board's regulations also provide detailed guidance for assessing medical opinions. Medical opinions that the Board considers conclusive are those that are "fully supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial medical evidence of record." 20 C.F.R. § 220.112(b). Nevertheless, the regulations still obligate the Board to "make every reasonable effort . . . to obtain from the claimant's treating source(s) the relevant evidence that supports the medical opinion(s)" in the event that the opinion is not "fully supported." Id. § 220.112(c). The Board also "must resolve" inconsistencies between medical opinions and evidence in the record, including by "secur[ing] additional independent evidence and/or further interpretation or explanation from the treating source(s) and/or the consultative physician or psychologist" if necessary. Id. § 220.112(d). The Board makes its "determination . . . based on all the evidence in the case record." Id.

Here, Rabin's opinions and Voss's 2015 claim that he "probabl[y]" treated Crockett "for mental health issues" prior to his reaching the age of 22 do not appear to comport with these regulatory requirements. Statements about his current

- 8 -

schizophrenia diagnosis, previous treatment, and the likelihood that Crockett developed schizophrenia in adolescence will not suffice without further support that complies with the agency's regulations. To that end, Voss's 2015 letter did not mention any specific diagnosis and Rabin's opinions were not "fully supported by medically acceptable clinical and laboratory diagnostic techniques" under sections 220.112 and 220.27 for the purposes of showing that Crockett developed a mental impairment prior to age 22 because they were not evidenced by "symptoms, signs, and laboratory findings" of Crockett's presentation prior to age 22 under section 220.113. Section 220.113(a) explicitly mandates that "[s]ymptoms," or "the claimant's own description of his or her physical or mental impairment(s)," cannot alone establish an impairment. And, as the Board noted, Rabin's "opinions do not suggest how the medical signs and findings of 2014 and 2015 . . . may be presumed to be present at the same level in 1976 other than based on Mr. Crockett's reports of symptoms to them."[4]

---

[4] To be sure, Rabin also noted that schizophrenia is "a lifelong illness that usually first appears in adolescence" and that "the time frame of onset of schizophrenia [is] completely consistent with [Crockett] becoming disabled in adolescence." But schizophrenia's population-wide characteristics would not appear to suffice as support for her opinion regarding Crockett's disability onset date under the Board's regulations. Such evidence would not constitute "signs," or "anatomical, physiological, or psychological abnormalities which can be observed, apart from the claimant's own statements[,]" on an individual claimant. 20 C.F.R. § 220.113(b). And the regulation's mention of "medically acceptable laboratory diagnostic techniques . . . includ[ing]

- 9 -

The hearings officer and Board were thus entitled to not "consider[] [Rabin's and Voss's opinions] conclusive nor [to] give[] [them] extra weight." 20 C.F.R. § 220.112(e).[5] And, in the context of that conclusion, we cannot reweigh the evidence that was before the Board and hearings officer. See Dray, 10 F.3d at 1310. The hearings officer and the Board considered 37 exhibits in concluding that Crockett was not disabled under the Board's regulations prior to age 22, including records that showed inconsistencies between Crockett's statements to the SSA and to the Board about his disability onset date and school records that contradicted Crockett's statements that he struggled academically. Crockett nevertheless contends that the Board and hearings officer did not "adequately consider the written statements of [his] mother and his high school art teacher," and he also challenges the Board's determination that Voss's second letter recalling that Crockett was diagnosed with schizophrenia was "uncorroborated

_____

chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.) x-rays, and psychological tests," id. § 220.113(c) -- all of which focus on individual people or objects -- also appears to indicate that "[l]aboratory findings" do not include population-wide evidence, as a matter of ejusdem generis. See Me. Forest Prods. Council v. Cormier, 51 F.4th 1, 10 (1st Cir. 2022) ("[T]he ejusdem generis canon . . . instructs that where 'a more general term follows more specific terms in a list, the general term is usually understood to embrace any object similar in nature to those objects enumerated by the preceding specific words.'" (quoting Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1625 (2018))).

[5] Voss's 2017 letter is discussed in more detail below.

- 10 -

[because it was written] 40 years after the fact, [was] inconsistent with his statement of two years prior, and not supported by the evidence." Crockett asserts that this conclusion was unwarranted because Voss's recollection "had been adequately refreshed," including through a conversation with Rabin. But determining credibility and weighing conflicting pieces of evidence are quintessential tasks for fact-finders, to whom we owe great deference on substantial evidence review. Cf. Mashilingi v. Garland, 16 F.4th 971, 977 (1st Cir. 2021) ("[A]s long as the agency's credibility determination is supported by reasonable, substantial, and probative evidence on the record considered as a whole, we must accept it." (quoting Zaruma-Guaman v. Wilkinson, 988 F.3d 1, 5 (1st Cir. 2021))). Accordingly, and given the sum total of the record, we are constrained to conclude that there was "such relevant evidence as a reasonable mind might accept as adequate to support [the RRB's conclusion]." Sansone, 159 F. App'x at 211 (quoting Richardson, 402 U.S. at 399).

**B.**

Crockett also asserts that the hearings officer breached her duty "to more fully develop the record regarding [his claim of having a disability prior to age 22]." Citing to our decision in Torres-Pagán v. Berryhill, 899 F.3d 54, 59-60 (1st Cir. 2018), he argues that the hearings officer had a duty to do so because he "was represented only by a non-attorney social worker at the

- 11 -

hearing and because of his documented mental impairment." He also, as further support for his view that the decision reached by the agency was insufficiently supported, points to the relative paucity of medical evidence from his adolescence and the fact that the evidence cited by the hearings officer and the Board did not "meaningfully contradict[] the statements of Mr. Crockett, his treating physicians and other medical providers, or the statements of his mother and his art teacher, regarding the observed or likely onset of his disabling schizophrenia symptoms prior to age 22."

We cannot gainsay the importance of a full and fair hearing for all claimants before the Board, and this rings especially true in cases involving individuals with disabilities. Indeed -- and as Crockett points out -- we recognized in Torres-Pagán that

> [p]ro se status, coupled with diagnosed mental deficiencies, is without question the type of situation where we believe an ALJ has a heightened responsibility to develop the record. . . . [I]ndividuals with psychiatric disorders are often some of the most vulnerable in society and unlike the standard pro se claimant at an [agency] hearing, those with alleged disabilities sounding in mental health may be particularly vulnerable when unrepresented by counsel.

899 F.3d at 59-60. We nevertheless do not believe that the hearings officer breached any such duty in this case. Fundamentally, Torres-Pagán and Currier v. Secretary of Health,

- 12 -

<u>Education & Welfare</u>, 612 F.2d 594, 597 (1st Cir. 1980) -- a predecessor to <u>Torres-Pagán</u> -- both concerned scenarios in which the officer in question made no attempt to obtain at least reasonably readily available evidence. In <u>Torres-Pagán</u>, we remanded after an ALJ's finding that the claimant was no longer disabled, when the ALJ had made no attempt to obtain evidence of contemporaneous psychiatric treatment, despite the fact that the claimant had "provided the [a]gency with his doctor's name, the medical facility[,] . . . his prescribed medications (with dosages), [the facility's] address, [the facility's] phone number, and reasons for visiting [the facility]." 899 F.3d at 59. Similarly, we remanded after an ALJ's decision in <u>Currier</u>, when the ALJ had found that the claimant could "perform the same type of work at another establishment and therefore [was] not entitled to disability benefits" merely based on clinical notes that were both contradicted by other evidence in the record and "unaccompanied by any formal opinion and diagnosis explaining to what degree and in what respect appellant may be impaired by his mental illness and relating these deficiencies to the requirements of his former job and other available jobs." 612 F.2d at 597. We explained that agency officials presiding over disability claimants' hearings have a duty to "to see that the gaps [in the record] are somewhat filled . . . by ordering easily obtained

further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness." Id. at 598.

Here, by contrast, the record does not suggest any readily available evidence that would meet the Board's regulatory standards. Crockett suggests that the hearings officer could have "obtain[ed] testimony or responses to written questions from Dr. Rabin and/or Dr. Voss to more fully establish the basis for their opinions that [Crockett] had been disabled due to schizophrenia prior to age 22," given both his current diagnosis and the fact that schizophrenia is "know[n] to commonly be of long duration[,] beginning in adolescence or early adulthood." But it is not clear to us that doing so would have aided in developing Crockett's case. As noted above, the Board's regulations require that conclusive medical opinions be "fully supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 220.112(b); if they are not, the Board will endeavor "to obtain from the claimant's treating source(s) the relevant evidence that supports the medical opinion(s)," id. § 220.112(c).

Current testimony from Voss or Rabin likely would not suffice under these regulations for much the same reasons that their opinions do not. Rabin only treated Crockett decades after he turned 22, and, even setting aside the fact that he initially did not recall treating Crockett, Voss's 2015 letter did not diagnose Crockett with schizophrenia, and the Board determined

- 14 -

that his 2017 letter was not entitled to weight.  Accordingly, we see no obligation to develop the record, as neither Rabin nor Voss can provide "relevant evidence that supports" a diagnosis of schizophrenia before Crockett attained the age of 22.  Id. § 220.112(c).  Given those factors, Torres-Pagán's reasoning concerning readily-available evidence does not apply to Crockett's case.  The hearings officer thus did not run afoul of any obligation she had under that case.

## IV.

As counsel for the Board acknowledged before us, Crockett has advanced a sympathetic case.  But we are bound to apply the Board's valid regulations, and the substantial evidence standard is a notoriously "high bar" for claimants to meet.  Loja-Tene, 975 F.3d at 62.  The petition for review is thus **denied**.